EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Virgilio J. González Pérez<br>(TS-15,218) | 2022 TSPR 09<br><br>208 DPR |

Número del Caso:  CP-2021-0007


Fecha:  25 de enero de 2022


Oficina del Procurador General:

     Lcdo. Omar Andino Figueroa
     Subprocurador General

     Lcda. Noemí Rivera de León
     Procuradora General Auxiliar


 Abogado del querellado:

     Por derecho propio


Materia:  Conducta Profesional - Suspensión del ejercicio de la abogacía y la notaría por el término de 3 meses por violación a los Arts. 2, 12, 56 y 59 de la Ley Notarial de Puerto Rico; las Reglas 12, 67 y 72 del Reglamento Notarial de Puerto Rico y los Cánones 18, 35 y 38 del Código de Ética Profesional.  La suspensión será efectiva 25 de enero 2022, fecha en que se notificó al abogado de su suspensión inmediata.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Virgilio J. González Pérez       CP-2021-0007
   (TS-15,218)

*PER CURIAM*

En San Juan, Puerto Rico, a 25 de enero de 2022.

Nos corresponde ejercer nuestro poder disciplinario para evaluar si el Lcdo. Virgilio J. González Pérez incumplió los Cánones de Ética Profesional, *infra*, y las disposiciones de la Ley Notarial, *infra*, al autorizar un traspaso de vehículo sin la presencia y autorización del vendedor. Por los hechos que se relatan adelante, concluimos que este quebrantó los Arts. 2, 12, 56 y 59 de la Ley Notarial de Puerto Rico, *infra*; las Reglas 12, 67 y 72 del Reglamento Notarial de Puerto Rico, *infra*; y los Cánones 18, 35 y 38 del Código de Ética Profesional, *infra*. En consecuencia, ordenamos su suspensión del ejercicio de la abogacía y de la notaría por un periodo de tres meses.

## I

El Lcdo. Virgilio J. González Pérez fue admitido al ejercicio de la abogacía el 16 de febrero de 2005. Posteriormente, prestó juramento como notario el 30 de marzo de 2005.

El 22 de noviembre de 2019 el Sr. Rolando Reina Sanabria presentó la queja que nos ocupa contra el licenciado González Pérez. En ella, relató que suscribió un contrato de préstamo con garantía prendaria con el Sr. Jorge Bobonis Rexach (prestamista). La prenda consistía, originalmente, en dos equinos. No obstante, el quejoso explicó que mediante intimidación se le indujo a suscribir una enmienda al contrato para incluir como prenda adicional dos vehículos de arrastre —específicamente dos carretones de equinos— y un equino adicional. Detalló que la enmienda al contrato establecía que "los títulos de propiedad de ambos vehículos en original y endosados permanecerán en la oficina del Lcdo. Francisco J. Hernández Bosch" y que "ambos carretones y el equino permanecerán en la propiedad el deudor".

Así las cosas, indicó que recibió una comunicación del representante legal del prestamista alegando que tenía que entregarle los vehículos de arrastre. Ante ello, expresó que acudió al Centro de Servicios del Conductor (CESCO) de Carolina para solicitar duplicados de los certificados de títulos de propiedad originales de los dos carretones que eran de su propiedad. Arguyó que allí le informaron que ambos vehículos habían sido traspasados a nombre del prestamista. Sostuvo que

como nunca autorizó esos traspasos, solicitó en la Directoría de Servicios al Conductor (DISCO) una investigación sobre cómo se realizaron los traspasos sin su presencia ni consentimiento. Allí averiguó que los traspasos se realizaron el 19 de julio de 2019 en el CESCO de Arecibo, que el número de afidávit de uno de los traspasos era 16,252 y que el notario público que autorizó los mismos fue el licenciado González Pérez, aquí promovido. Con esa información indicó que acudió a la Oficina de Inspección de Notarías (ODIN) para indagar sobre los índices notariales del abogado para los meses de julio y agosto de 2019. No obstante, allí le informaron que no aparecía notificado ningún documento autorizado por el licenciado González Pérez que haya otorgado el señor Reina Sanabria relacionado a los traspasos de los carretones. Finalmente, arguyó que los hechos anteriores servían de base para presentar una queja contra el promovido por notarizar indebidamente documentos de traspaso de vehículo sin la presencia o consentimiento de la persona que dispone.

El licenciado González Pérez contestó la queja y solicitó su desestimación. Explicó que el 18 de julio de 2019, trabajó hasta entrada la noche en un concesionario de autos de Arecibo, y se llevó su Registro de Testimonios para su residencia pero que al día siguiente -19 de julio de 2019-, olvidó llevar el Libro de Testimonios a su oficina. En consecuencia, narró que ese día, 19 de julio de 2019, el prestamista —quien es representante del concesionario Kingdom Auto Imports— fue a su oficina para realizar un traspaso y que, al no tener el Registro

de Testimonios, confió en su memoria y le asignó al afidávit el número 16,252, cuando el que le correspondía era el número 16,112.

No obstante, le tomó fotos a los traspasos y a los documentos acreditativos del concesionario con la intención de hacer las correspondientes entradas en una fecha posterior. Agregó que, debido al alto volumen de trabajo que maneja olvidó hacer las entradas en el libro de testimonios y que por esa razón no aparecían. Asimismo, indicó que no tiene la misma unidad de celular por lo que, tampoco cuenta con las fotos de los traspasos. Justificados los eventos anteriores, el notario admitió que fue un error no hacer las entradas correspondientes en su registro.

Por otro lado, en cuanto al reclamo del señor Reina Sanabria en la queja, el promovido argumentó que el Art. 2.34(c) de la Ley de Vehículos y Tránsito de Puerto Rico, 9 LPRA sec. 5001 *et seq.*, (Ley de Vehículos y Tránsito) les permite a los notarios autorizar traspasos con la autenticidad del representante del concesionario únicamente.[1] Conforme a ello

---

[1] El promovido sostuvo que no incurrió en violación ética ya que autorizó el traspaso del vehículo de arrastre al amparo del Art. 2.34(c) de la Ley de Vehículos y Tránsito, supra. El aludido articulado dispone y establece las normas en relación con las "[t]ablillas especiales para exprisioneros de guerra, militares condecorados con la orden del Corazón Púrpura, militares de carrera retirados y miembros de las Reservas de las Fuerzas Armadas". 9 LPRA sec. 5035. Este artículo evidentemente no guarda relación con los hechos de este caso. Por las alegaciones y los argumentos del licenciado González Pérez, asumimos que este se refirió al Art. 2.40 de la Ley de Vehículos y Tránsito, supra, el cual establece las normas para "[t]raspaso de vehículos de motor, arrastres o semiarrastres". 9 LPRA sec. 5041. Así, haremos referencia al Art. 2.40(e) en esta Opinión *Per Curiam* aun cuando el licenciado González Pérez hace referencia al Art. 2.34(c) en sus escritos ante este Tribunal. Adviértase que, mediante la Ley Núm. 24 del 29 de abril de 2017 se enmendó la Ley de Vehículos y Tránsito de Puerto Rico, a los fines de reformar y simplificar la redacción del estatuto, atemperarlo a otras disposiciones legales y cumplir con el Plan Fiscal certificado por la Junta de Supervisión Fiscal. Esta enmienda tuvo el efecto

indicó que el prestamista era el representante del concesionario Kingdom Auto Imports y que este le mostró los traspasos debidamente firmados por el señor Reina Sanabria. Especificó, que —a propósito de la queja— realizó una investigación la cual le permitió reconfirmar que, en efecto, el señor Reina Sanabria le había entregado los traspasos al señor Bobonis Rexach. Así, argumentó que el quejoso nunca negó haber firmado los traspasos, sino que se limitó a expresar que no compareció ante el notario para autorizar los mismos. Conforme a lo anterior, el licenciado González Pérez solicitó que excusemos su error involuntario de la falta de entrada en el registro de testimonios y que desestimemos la queja por frívola.

El señor Reina Sanabria replicó. Enfatizó que los traspasos en controversia eran sobre dos carretones, no sobre vehículos de motor. Además, alegó que los carretones nunca se le entregaron a un concesionario como pronto pago de un vehículo de motor, más bien, estos se relacionaban a un contrato de prenda y nada más. Por lo anterior, el quejoso argumentó que no era correcto interpretar la actuación del notario a la luz del Art. 2.40(e) de la Ley de Vehículos y Tránsito, _supra_, según este invocó. En todo caso, señaló que el referido artículo exige que como parte del traslado se haga constar una declaración jurada del concesionario. Esta debe incluir la fecha en que fue cedida o entregada la unidad; el nombre y la dirección del

---

de derogar algunos capítulos y añadir la creación de otros nuevos. Por ello, previo al 2017, el articulado que el licenciado González Pérez utiliza como defensa correspondía al número 2.34. 9 LPRA sec. 5035. Actualmente —y bajo la ley aplicable al momento de autorizar el afidávit objeto de esta queja— el articulado que el promovido intenta utilizar como defensa corresponde al número 2.40. 9 LPRA 5041.

dueño, y el medio utilizado para identificar a esa persona, documentos que fueron omitidos en la contestación a la queja.

Así las cosas, el 12 de marzo de 2020 referimos la Queja Núm. AB-2019-246 a la ODIN y a la Oficina del Procurador General para la investigación correspondiente.

El 9 de julio de 2020 recibimos el Informe de la ODIN. En este, la ODIN constató que el 19 de julio de 2019 el notario González Pérez únicamente legitimó la firma del beneficiario de los traspasos de los vehículos objeto de la queja, el prestamista. Este, en calidad de representante del concesionario Kingdom Auto Imports. Destacó que tanto el promovido como el promovente admiten que el señor Reina Sanabria no compareció para autorizar el traspaso.

Además, hizo constar que los certificados de título que tuvo ante sí el notario identificaban cada vehículo como de arrastre, en lugar de vehículos de motor. A tono con ello, explicó que el Art. 2.40(e) de la Ley de Vehículos y Tránsito, supra, permite a manera de excepción que un concesionario de **vehículos de motor** realice un traspaso mediante declaración jurada si previamente el dueño del vehículo manifestó su voluntad de cederlo o traspasarlo al concesionario como **pronto pago** por el precio de otro vehículo de motor (trade-in) y estampó su firma al dorso del certificado. Conforme a ello, analizó que el promovido debió ejercer mayor esmero, cuidado y diligencia al aplicar una norma excepcional sobre vehículos de motor al traspaso de los carretones en ausencia del titular de estos. Por lo tanto, concluyó que con su conducta el promovido

quebrantó el Art. 2.40(e) de la Ley de Vehículos y Tránsito, supra, el Art. 56 de Ley Notarial, 4 LPRA sec. 2091 y la Regla 67 del Reglamento Notarial, 4 LPRA Ap. XXIV, R. 67. Con ello, además, violó la fe pública notarial que recoge el Art. 2 de la Ley Notarial, 4 LPRA sec. 2002.

Por otro lado, la ODIN analizó que el promovido incurrió en violaciones éticas al omitir ingresar los asientos de ambas transacciones en su Registro de Testimonios y notificarlos en el informe de actividad notarial correspondiente. Lo anterior, de conformidad con las exigencias del Art. 12 de la Ley Notarial, 4 LPRA sec. 2023, Art. 60 de la Ley Notarial, 4 LPRA sec. 2095, la Regla 12 del Reglamento Notarial, 4 LPRA Ap. XXIV, R. 12 y la Regla 72 del Reglamento Notarial, 4 LPRA Ap. XXIV, R. 72. Esa omisión colocó en suspenso la anulabilidad de ambas transacciones jurídicas toda vez que los testimonios que no se inscriben en el Registro de Testimonios o no se notifican en los índices mensuales se pudieran declarar nulos. Art. 60 de la Ley Notarial, supra; Reglas 72 y 73 del Reglamento Notarial, 4 LPRA Ap. XXIV, R. 72 y R. 73.

Asimismo, la ODIN concluyó que el promovido violó el Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 18, al no ejercer la diligencia que requiere la legitimación de firmas para el traspaso de vehículos de arrastre. En resumen, la ODIN analizó que en el ejercicio de su función notarial el promovido violó la fe pública notarial que recogen los Arts. 12, 56 y 59 de la Ley Notarial, supra, así como las Reglas 12, 67 y 72 del Reglamento Notarial, supra, por consiguiente, incumplió el

Canon 18, supra, así como, los Cánones 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 35, 38.

Determinado lo anterior, la ODIN resaltó que este no es el primer procedimiento disciplinario contra el peticionario por alegaciones similares.[2] Por tal razón, recomendó su suspensión del ejercicio de la notaría por un término no menor de tres meses.

El 6 de octubre de 2020 recibimos el Informe del Procurador General. Este señaló que, en el Certificado de Título del vehículo de arrastre, bajo la firma del promovente y del prestamista, aparece la firma y el sello del promovido bajo las palabras "suscrito y juramentado ante mí Hoy Día 19 de julio de 2019".[3] Además, informó que el promovido aceptó que realizó el traspaso de ambos vehículos de arrastre sin la presencia del señor Reina Sanabria y que la única firma que autenticó fue la del representante del concesionario, quien fue la persona que estuvo en su presencia. Por consiguiente, el Procurador General constató que el promovido legitimó la firma del señor Reina Sanabria sin que este estuviera presente. Por lo expuesto, el Procurador General concluyó que el promovido dio fe de que ambas

---

[2] El 15 de abril de 2019 el señor Eduardo Román Meléndez presentó una queja contra el licenciado González Pérez, AB-2019-0088. Alegó que nunca compareció como vendedor a la autorización de un traspaso de un vehículo de motor. Entendió que se falsificó su firma ante el promovido. Este traspaso se dio en medio de un proceso de división de comunidad de bienes que culminó con Sentencia por Estipulación de 25 de julio de 2019. El promovente adujo que no compareció a firmar el traspaso del vehículo, por lo que levantó sospechas en torno al método de identificación que utilizó el promovido al legitimar las firmas en esa transacción. A ello le abonó que las circunstancias personales del Asiento Núm. 4834 del Libro de Registro de Testimonios del promovido no concordaban con las del promovente. Luego de un tiempo el promovente solicitó el desistimiento de la queja, la cual fue archivada por este Tribunal el 7 de mayo de 2021.
[3] Anejo I, Informe del Procurador General.

firmas se realizaron en su presencia el 19 de julio de 2019, cuando ello no ocurrió. En consecuencia, le imputó al licenciado González Pérez certificar un hecho falso, y con ello violar los Arts. 2 y 56 de Ley Notarial, supra, la Regla 67 del Reglamento Notarial, supra y los Cánones 18, 35 y 38 del Código de Ética Profesional, supra.

Por otro lado, el Procurador General encontró que el promovido admitió en su contestación a la queja que olvidó hacer las correspondientes entradas relacionadas al traspaso de los vehículos de arrastre en el Registro de Testimonios y que tampoco las notificó en el informe de actividad notarial mensual correspondiente. Por tanto, le imputó incumplir con su deber notarial, en violación a los Arts. 12 y 60 de la Ley Notarial, supra, y a las Reglas 12 y 72 del Reglamento Notarial, supra.

Finalmente, el Procurador General destacó que los abogados y las abogadas tienen el deber de cumplir con sus obligaciones de manera diligente en su función como notario o notaria. Además, tienen el deber de sinceridad y honradez que establece el Canon 35 del Código de Ética Profesional, supra. Al certificar un hecho falso, no solo se falta al deber de diligencia, sino que, además, viola el deber de sinceridad y honradez. Por ende, el Procurador General sostuvo que el promovido también incumplió los Cánones 18, 35 y 38 del Código de Ética Profesional, supra.

Mediante Resolución de 23 de noviembre de 2020 le concedimos al promovido un término para que se expresara en torno al Informe del Procurador General. El 29 de enero de 2021

recibimos su *Alegato en contestación a Informe*. En esencia, adujo que no incurrió en conducta antiética alguna o que, al menos, no lo hizo intencionalmente. Alegó que el prestamista lo indujo a creer que el negocio jurídico en virtud del cual el señor Reina Sanabria endosó el Certificado de Título había sido un pronto pago (trade-in), y que puede entender cómo falló en la interpretación del Artículo 2.40(e) de la Ley de Vehículos y Tránsito, supra. Específicamente, narró que la información que obtuvo del prestamista fue que el vehículo de arrastre objeto del traspaso se entregó como pronto pago (trade-in) en el curso regular de su negocio, el concesionario de vehículos usados Kingdom Auto Imports. Sostuvo, además, que advino en conocimiento de que los arrastres no se entregaron en pronto pago (trade-in) cuando se le notificó la queja de referencia.

Asimismo, el licenciado González Pérez indicó que actuó bajo la premisa de que el Art. 2.40 de la Ley de Vehículos y Tránsito, supra, aplica a vehículos de arrastres que se entregaban en pronto pago (trade-in). No obstante, admitió que su interpretación podría estar errada. Sostuvo que eso no lo convierte en un notario antiético, sino en un abogado que le dio una interpretación errada a una disposición legal confusa.

Por último, solicitó la desestimación de la queja con las expresiones que este Tribunal tenga a bien hacer o, en la alternativa, que se le permita continuar con su defensa. También en la alternativa, solicitó que, si se determina que su conducta merece una sanción, que no sea la suspensión.

Por otra parte, el 8 de marzo de 2021 le concedimos al promovido un término para que se expresa en torno al Informe de la ODIN. El 26 de abril de 2021 el promovido presentó su contestación al Informe de la ODIN y, en esencia, reprodujo lo mismo que en su comparecencia anterior.

Atendido el asunto, el 28 de mayo de 2021 le ordenamos al Procurador General que presentara una querella contra el licenciado González Pérez por los hechos de la queja. De conformidad, el Procurador General radicó una querella que se identificó con el alfanumérico CP-2021-07 en la que le imputó varios cargos éticos.[4] El 22 de noviembre de 2021 el licenciado

---

[4] Los cargos fueron los siguientes:

CARGOS I Y II: El Lcdo. Virgilio J. González Pérez infringió los preceptos de la fe pública notarial contenidos en el Artículo 2 de la Ley Notarial de Puerto Rico, supra, y el Canon 35 del Código de Ética Profesional, supra, al dar fe falsamente de que, el 19 de julio de 2020, los Sres. Rolando Reina Sanabria y Jorge Bobonis Rexach firmaron en su presencia el Certificado de Título del vehículo de arrastre cuando la única persona que compareció a su oficina fue el Sr. Jorge Bobonis Rexach.

CARGOS III y IV: El Lcdo. Virgilio J. González Pérez incurrió en violación al Artículo 56 de la Ley Notarial de Puerto Rico, supra, y la Regla 67 del Reglamento Notarial de Puerto Rico, supra, al dar fe y legitimar la firma del señor Rolando Reina Sanabria en el Certificado de Título del vehículo de arrastre- el 19 de julio de 2020- cuando este último no firmó en su presencia.

CARGOS V, VI, VII, VIII y IX: El Lcdo. Virgilio J. González Pérez incurrió en violación a los Artículos 12, 59 y 60 de la Ley Notarial de Puerto Rico, supra, y las Reglas 12 y 72 del Reglamento Notarial de Puerto Rico, supra, al no ingresar en el volumen correspondiente del Libro de Registro de Testimonios los asientos relacionados con los documentos que notarizó y tampoco notificarlos en el Informe de Actividad Notarial mensual correspondiente.

CARGOS X y XI: El Lcdo. Virgilio J. González Pérez violó los Cánones 18 y 38 del Código de Ética Profesional, supra, al no ser diligente ni competente en el ejercicio de su función notarial, no exaltar el honor y la dignidad de la profesión, y no evitar hasta la apariencia de conducta impropia. Ello así, al notarizar los traspasos de dos vehículos de arrastre el 19 de julio de 2019, en contravención a la Ley y el Reglamento Notarial y al consignar hechos falsos en el mismo.

González Pérez presentó su contestación a la Querella. En esencia esbozó que su actuación no tuvo la intención de infringir ningún postulado ético ni reglamento alguno. Sostuvo que su proceder fue cónsono con la interpretación que en su día le dio al artículo 2.40 de la Ley de Vehículos y Tránsito, supra. Específicamente, reiteró que fue objeto de "treta y engaño"[5] tras el prestamista hacerle creer que el arrastre había sido entregado en pronto pago ("trade in") en el curso normal de su negocio de concesionario de vehículos usados. En cuanto a la falta sobre el índice notarial, el promovido aceptó y explicó que se debió al "olvido involuntario y exceso de trabajo".[6] Así, nos solicitó que, tomando en consideración los hechos anteriores, desestimáramos la Querella.

## II

Los notarios y las notarias están subsumidos a los preceptos éticos que rigen nuestra profesión. Así, al ejercer su función notarial tienen que observar las disposiciones de la Ley Notarial de Puerto Rico, supra; el Reglamento Notarial de Puerto Rico, supra, y el Código de Ética Profesional, supra. La inobservancia con estos postulados, no solamente exponen al notario o notaria a sanciones severas, sino que, además, causan inestabilidad en los negocios jurídicos del país. In re Sánchez Reyes, 204 DPR 548 (2020); In re Charbonier Laureano, 204 DPR 351 (2020); In re García Cabrera, 201 DPR 902 (2019).

**A.   Disposiciones Notariales**

---

[5] Contestación a la Querella, pág. 5.
[6] Id. págs. 5-6.

El Art. 2 de la Ley Notarial establece el principio de la fe pública notarial. Este artículo dispone que "la fe pública al notario [y a la notaria] es plena respecto a los hechos que, en el ejercicio de su función, **personalmente ejecute o compruebe**, y también respecto a la forma, lugar, día y hora del otorgamiento". 4 LPRA sec. 2002 (Énfasis suplido). Así pues, la fe pública notarial va acompañada de un ejercicio pleno del notario o de la notaria respecto a lo que este o esta presencie. In re Peña Osorio, 169 DPR 738, 788-789 (2019). Es por ello que un documento notarial endosado por la fe de un notario o notaria se presume que cumple con las exigencias de ley y "brinda la confianza de que los hechos jurídicos y las circunstancias que acredita el notario fueron percibidos y comprobados con sus sentidos o ejecutados por él [o ella]". Art. 2 de la Ley Notarial, supra. El notario o la notaria fedante tiene una función tan importante que no es necesario que el notario falte a la verdad intencionalmente para que incurra en una violación a ella. In re Vázquez Pardo, 185 DPR 1031, 1041 (2012).

Por otro lado, el Art. 12 de la Ley Notarial, supra, y la Regla 12 del Reglamento Notarial, supra, le impone a los notarios y a las notarias el deber de rendir un Informe de Actividad Notarial Mensual. En este, deben relacionar el instrumento o testimonio autorizado, entre otros: (1) por número del instrumento o testimonio; (2) con los nombres de las partes comparecientes a la otorgación, (3) la fecha de autorización, (4) la cuantía objeto del instrumento o testimonio; (5) los y las testigos del instrumento o testimonio (de ser necesarios),

y (6) el objeto del instrumento o testimonio. In re Cabrera Acosta, 193 DPR 461, 466 (2015).

El Informe de Actividad Notarial Mensual debe ser cumplimentado no más tarde del décimo día calendario del mes siguiente al informado en el instrumento. Art. 12 de la Ley Notarial, supra; Regla 12 del Reglamento Notarial, supra. Los índices de actividad garantizan la certeza de los documentos en los que intervienen los notarios y "evitan el riesgo de manipulación y fraude". In re Cabrera Acosta, supra, págs. 466-467; In re Santiago Ortiz, 191 DPR 950, 961 (2014). Por ello, el incumplimiento con este requisito menoscaba la fe pública investida en los notarios y en las notarias del país. Véanse, In re Villalona Viera, 206 DPR 360 (2021); In re Charbonier Laureano, supra, en la pág. 362; In re Cabrera Acosta, supra, en las págs. 466-467.

Entiéndase, el ejercicio de realizar un Índice de Actividades cumple una función cuyo objetivo es brindar confianza a los negocios jurídicos. Por ello, aun cuando un notario o una notaria no haya tenido actividad notarial durante ese mes, este o esta, viene obligado a rendir un informe negativo a la ODIN. In re Torres Dávila, 195 DPR 558, 564 (2016). La omisión de rendir índices notariales es considerada una falta grave a los deberes que le impone la investidura de la fe pública notarial al notario y a la notaria, y por ello tal conducta merece severas sanciones disciplinarias. Id.; In re: Santaliz Martell, 194 DPR 911, 915 (2016). Como consecuencia, el Art. 60 de la Ley Notarial, supra, establece

la nulidad de todo testimonio que no haya sido incluido en el índice mensual, no lleve la firma del notario autorizante o no se haya inscrito en el Registro de Testimonios. In re Charbonier Laureano, supra, en la pág. 362.

Por su parte, la declaración de autenticidad o testimonio se define como un documento mediante el cual un notario o una notaria da testimonio de fe de un documento no matriz, sobre la fecha del testimonio, las firmas que en él aparezcan, la toma de juramento, entre otras. Art. 56 de la Ley Notarial, supra; In re Villalona Viera, supra, en la pág. 371. En otras palabras, las declaraciones juradas son testimonios de legitimación de firma. Id.; In re Vázquez Margenat, 204 DPR 968, 978 (2020).

En consecuencia, los notarios y las notarias no pueden dar fe notarial en un documento en el cual la persona que pretende la otorgación no compareció personalmente. Véanse, In re Villalona Viera, supra, págs. 371-72; In re Vázquez Margenat, supra, pág. 978; In re Arocho Cruz, 200 DPR 352, 366–67 (2018).

En In re Flores Martínez, 199 DPR 691, 702 (2018) expresamos que:

> Los notarios [y las notarias] deben abstenerse de dar fe notarial de una declaración jurada, si la persona que va a otorgar el documento o la declaración jurada no ha comparecido personalmente. De hacerlo, ese funcionario transgrede la fe pública notarial y perjudica la confianza depositada en el sistema de autenticidad documental. (Citas depuradas).

Así, el notario o la notaria que da fe de la comparecencia de una persona otorgante sin que esta, en efecto, haya comparecido, quebranta la fe pública notarial y afecta la

confianza depositada en el sistema de autenticidad documental. Véanse, In re Villalona Viera, supra, en la pág. 372; In re Arocho Cruz, supra, en la pág. 367. Además, incurre en una de las faltas más graves, a saber, la certificación de un hecho falso. Id.

Asimismo, la Regla 67 del Reglamento Notarial, supra, establece de manera diáfana que, el testimonio de legitimación de firma acredita el hecho de que, en determinada fecha, se firmó un documento en presencia del notario o de la notaria y que esa persona es quien dice ser. Id. También, establece que la legitimación de la firma podrá o no comprender el juramento. Además, precisa que el notario o la notaria tiene que hacer constar, tanto en el testimonio como en el Registro de Testimonios, que conoce personalmente al firmante o que lo ha identificado mediante los métodos supletorios que provee el Art. 17 de la Ley Notarial, 4 LPRA sec. 2035. Al hacerlo, el notario o la notaria garantiza la identidad del firmante y que el acto se realizó ante el notario. Véanse In re Villalona Viera, supra, en la pág. 372; In re Llanis Menéndez I, 175 DPR 22, 26 (2008).

Por último, el Artículo 59 de la Ley Notarial, supra, establece que los notarios y las notarias registrarán los testimonios que autoricen. Es también exigencia del ejercicio notarial, que el notario o la notaria **anote todos los testimonios en el Registro de Testimonios**, anteriormente conocido como Registro de Afidávit. Regla 72 del Reglamento Notarial, supra.

**B.    Cánones de Ética Profesional**

El Canon 18 del Código de Ética Profesional, supra, requiere que los abogados y las abogadas rindan una labor idónea de competencia y diligencia. In re Sánchez Reyes, supra, en la pág. 567; In re Villalona Viera, supra, en las págs. 373-74; In re Peña Osorio, supra, en la pág. 790. Los preceptos legales y éticos de la labor notarial le exigen a los notarios y las notarias cumplir con las disposiciones pertinentes para que los negocios jurídicos que autoricen estén dentro del estándar adecuado para que estos sean válidos y efectivos. Por ello, la notario o el notario que se tome livianamente la custodia de la fe pública notarial incumple con este deber. In re Vázquez Margenat, supra, en la pág. 979; In re Arocho Cruz, supra, pág. 367. Asimismo, el notario o la notaria debe demostrar que posee los conocimientos jurídicos necesarios para autorizar los negocios jurídicos que le sean requeridos. In re Villalona Viera, supra, pág. 367; In re Torres Rivera, 204 DPR 1 (2020). La persona que autoriza un negocio jurídico no puede descansar en supuestos o entendidos. Esta debe tener certeza de lo que va a autorizar. Meras suposiciones contravienen lo dispuesto en este canon al no ejercer la profesión con el cuidado y la prudencia que se requiere.

Por su parte, el Canon 35 del Código de Ética Profesional, supra, exige que los miembros de la profesión legal se conduzcan de forma sincera y honrada y que se ajusten a la sinceridad de los hechos al examinar testigos, al redactar afidávits u otros documentos. Es norma reiterada que un notario o una notaria "no

puede suscribir hechos inconsistentes con la realidad". In re Pagán Díaz, 198 DPR 398, 407-08 (2017). Además, "[t]odo jurista ostenta la obligación ineludible de asegurarse que los datos consignados en cada documento que firma o redacta son veraces". Id. Así, el notario o la notaria que asevere cualquier hecho en un instrumento público que no concuerde con la verdad incumple con el Canon 35, supra. In re García Cabrera, supra, en la pág. 936; In re Pagani Padró, 198 DPR 812, 825 (2017). Se falta a la verdad cuando un notario o una notaria asevera que una parte compareció ante él o ella y ello es totalmente falso.

Un abogado y una abogada debe regirse conforme a los más altos postulados éticos. Ello, debido a que nuestra profesión tiene un gran impacto en la vida y en la propiedad de otras personas. Es por esto que, la clase togada debe —y tiene— que conducirse con dignidad y honor en el ejercicio de sus funciones profesionales y en su vida privada. Canon 38 del Código de Ética Profesional, supra. Ello instituye el deber de evitar hasta la apariencia de conducta profesional impropia. In re Ramos Sáenz, 205 DPR 1089, 1102 (2020). No exalta la profesión legal el notario o la notaria que no desempeñe con cautela y celo la función pública del notariado. In re Vázquez Margenat, supra, en la pág. 980.

Un abogado o una abogada que incurre en incumplimiento del Canon 35 del Código de Ética Profesional, supra, también infringe el Canon 38 del Código de Ética Profesional, supra, pues la referida acción, denota una conducta impropia que tiene

un efecto lesivo en la honra de la profesión, ya que la conducta que realiza afecta sus condiciones morales y hace que sea indigno de pertenecer a este foro. In re Villalona Viera, supra, en la pág. 375; In re Vargas Velázquez, supra, en la pág. 690.

## C. Ley de Vehículos y Tránsito

El promovido sostuvo que no incurrió en violación ética ya que autorizó el traspaso del vehículo de arrastre al amparo del Art. 2.40(e) de la Ley de Vehículos y Tránsito, supra. Este articulado establece que, para traspasar vehículos de motor, arrastres o semiarrastres, tanto el dueño como el adquirente, deberán firmar y manifestar su voluntad de traspasar el vehículo al dorso del certificado de título. Ambas firmas tienen que hacerse bajo juramento ante notario o el funcionario autorizado por ley. Art. 2.40(a) y (b) de la Ley de Vehículos y Tránsito, supra. Como excepción, el inciso (e) del Art. 2.40, supra, autoriza que un concesionario de vehículos de motor realice el traspaso mediante declaración jurada si previamente el dueño del vehículo manifestó su voluntad de cederlo o traspasarlo al concesionario como pronto pago del precio de otro vehículo de motor y estampó su firma al dorso del certificado de título.[7]

---

[7] En lo pertinente, el Art. 2.40 (e) dispone:
   En los casos en que un concesionario de venta de vehículos de motor tome unidades usadas, como parte del pronto pago del precio de otros vehículos de motor, el traspaso podrá efectuarse mediante declaración jurada suscrita por el concesionario o vendedor, siempre y cuando, el dueño del vehículo de motor haya expresado previamente su voluntad de cederlo o traspasarlo a este, estampando su firma al dorso del certificado de título del vehículo. En tales casos, requerirá el cotejo previo por un funcionario del concesionario, debidamente autorizado por el Departamento, del expediente que obre en el Sistema DAVID PLUS en el DISCO además de la declaración jurada del concesionario deberá especificar la fecha en que fue cedida o entregada la unidad, el nombre y la dirección del dueño, al igual que el medio usado para la adecuada identificación de dicha persona. También incluirá una descripción detallada del vehículo de motor, la cual

Nótese que la excepción hace alusión **a negocios jurídicos de pronto pago (trade-in) sobre vehículos de motor únicamente**.

**III**

El señor Reina Sanabria alegó, en esencia, que el licenciado González Pérez notarizó los traspasos de dos de sus vehículos de arrastre sin su presencia ni su consentimiento. El abogado, por su parte, arguyó que realizó el traspaso ante la presencia del prestamista, quien compareció ante él como representante del concesionario Kingdom Auto Imports. Este añadió que el promovente le había entregado los traspasos firmados al prestamista cuando suscribió el Contrato de Préstamo y la Primera Enmienda a Contrato. En otras palabras, el licenciado González Pérez aceptó que autorizó el traspaso de dos vehículos de arrastre —que se ofrecieron en prenda— sin la presencia del titular de estos. Estas no son las circunstancias que contempla la excepción del Art. 2.40(e) de la Ley de Vehículos y Tránsito, <u>supra</u>. La excepción autoriza que un concesionario de vehículos de motor realice el traspaso mediante declaración jurada si el dueño del vehículo previamente manifestó su voluntad de cederlo o traspasarlo al concesionario **como pronto pago del precio de otro vehículo de motor** y estampa su firma al dorso del certificado de título.

---

contará con los datos siguientes: marca, año, color, modelo o tipo, número de tablilla que poseía el dueño anterior, número de registro del vehículo de motor, número de identificación del vehículo, tipo de motor, caballos de fuerza de uso efectivo, número de marbete (inspección), número de puertas y cualquier otros números o marcas de identificación de la unidad o de sus piezas. [. . .]

Al autorizar el traspaso el licenciado González Pérez descansó en la información provista por el prestamista. Entiéndase, el promovido no se cercioró del tipo de vehículo que se traspasaba ni la razón por la que el vendedor había endosado el título. En vez, justificó su error alegando que fue el prestamista quien lo indujo a creer que el traspaso estaba autorizado porque era un pronto pago del precio de otro vehículo (trade-in). La obligación y el deber ineludible de guardar la fe pública notarial le corresponde al notario o a la notaria, no es responsabilidad del o de la persona que acude ante este o esta. Por tanto, para entender que podía autorizar las firmas en el traspaso de título al amparo del Art. 2.40(e) de la Ley de Vehículos y Tránsito, supra, el licenciado González Pérez tenía la responsabilidad de corroborar (1) que el vehículo del traspaso era de motor y no de arrastre, y (2) que el vendedor endosó el título en pronto pago.

Como vimos, la alegada defensa del promovido sobre el Art. 2.40(e) de la Ley de vehículo y Tránsito, no le aplica. Ello debido a que el objeto del traspaso no era un vehículo de motor dado en pronto pago (trade-in). Por consiguiente, el notario solo podía autenticar las firmas del traspaso si ambos, el vendedor y el adquirente, firmaban ante sí. Recordemos que, conforme al artículo 56 de la Ley Notarial, supra, el notario da testimonio de las firmas que ante él se realizan. Por lo tanto, al este certificar bajo su fe notarial que el señor Reina Sanabria firmó en su presencia el Certificado de Título, este certificó un hecho falso porque ello no ocurrió. Lo anterior

constituyó una violación a los Arts. 2 y 56 de Ley Notarial, supra y Regla 67 del Reglamento Notarial de Puerto Rico, supra.

Además, al certificar un hecho falso, el letrado violó el deber de sinceridad y honradez que impone el Canon 35 del Código de Ética Profesional, supra, a todos los abogados y las abogadas, así como el deber de practicar la profesión de una forma honrosa y digna que impone el Canon 38, supra. In re Vargas Velázquez, supra, en la pág. 690. Con relación al Canon 35, supra, es menester destacar que, un notario o una notaria no puede escudarse bajo el pretexto de que su conducta no fue intencional cuando **da fe y suscribe que una persona compareció frente a él cuando en realidad ello no ocurrió.**

Al así actuar, y no cerciorarse del negocio jurídico en pugna, el licenciado González Pérez faltó al deber de diligencia proscrito en el Canon 18 del Código de Ética Profesional, supra.

Por último, el promovido admitió en su contestación a la queja que olvidó hacer las correspondientes entradas relacionadas al traspaso de los vehículos de arrastre en el Registro de Testimonios y que tampoco las notificó en el informe de actividad notarial mensual correspondiente. Ello, en violación a los Artículos 12 y 59 de la Ley Notarial, supra, y a las Reglas 12 y 72 del Reglamento Notarial, supra.

En el caso de autos, consideramos como atenuante que el letrado admite su falta de diligencia en la atención y cumplimiento con las disposiciones notariales. No obstante, destacamos que no es la primera queja que se presenta en contra del licenciado González Pérez. En vista de todo lo anterior y

tomando en consideración la totalidad de las circunstancias, procede suspender al letrado del ejercicio de la abogacía y la notaría por el término de tres meses.[8]

**IV**

Evaluado y ponderado el Derecho aplicable, así como las infracciones éticas que cometió el letrado, suspendemos inmediatamente al licenciado González Pérez del ejercicio de la abogacía y notaría por el término de tres meses. En virtud de la suspensión, el Alguacil de este Tribunal deberá incautar inmediatamente la totalidad de la obra protocolar y sello notarial del señor González Pérez y entregarlos al Director de la Oficina de Inspección de Notaría para el correspondiente examen e informe. De otra parte, la fianza que garantiza sus funciones notariales queda automáticamente cancelada. No obstante, la fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que estuvo vigente. Por último, le ordenamos al señor González Pérez notificar a todos sus clientes de su inhabilidad para continuar con su representación y a devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos.

Además, deberá informar inmediatamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente y acreditar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30)

---

[8] Cabe destacar que, la ODIN recomendó la suspensión del ejercicio de la notaría por un término no menor de tres (3) meses. Asimismo, el Procurador General entendió la necesidad de que este Tribunal impusiera la sanción disciplinaria que encontramos pertinente.

días, a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la abogacía de solicitarlo en el futuro. Notifíquese esta Opinión *Per Curiam* y Sentencia al Lcdo. Virgilio J. González Pérez.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

                           CP-2021-0007
Virgilio J. González Pérez
    (TS-15,218)

                           SENTENCIA

        En San Juan, Puerto Rico, a 25 de enero de 2022.


        Por los fundamentos antes expuestos, en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, suspendemos inmediatamente al licenciado González Pérez del ejercicio de la abogacía y notaría por el término de tres meses. En virtud de la suspensión, el Alguacil de este Tribunal deberá incautar inmediatamente la totalidad de la obra protocolar y sello notarial del señor González Pérez y entregarlos al Director de la Oficina de Inspección de Notaría para el correspondiente examen e informe. De otra parte, la fianza que garantiza sus funciones notariales queda automáticamente cancelada. No obstante, la fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que estuvo vigente. Por último, le ordenamos al señor González Pérez notificar a todos sus clientes de su inhabilidad para continuar con su representación y a devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos.

        Además, deberá informar inmediatamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente y acreditar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de esta Opinión *Per Curiam* y

Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la abogacía de solicitarlo en el futuro.

Notifíquese esta Opinión *Per Curiam* y Sentencia al Lcdo. Virgilio J. González Pérez.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez está conforme en parte y disiente en parte y emite la expresión siguiente:

"El Juez Asociado señor Colón Pérez está conforme en parte y disiente en parte del resultado alcanzado por una mayoría de este Tribunal en el día de hoy. Ello pues, si bien coincidimos en que el Lcdo. Virgilio J. González Pérez infringió los Arts. 2, 12, 56 y 59 de

la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, según enmendada, 4 LPRA secs. 2001 *et seq.,* las Reglas 12, 67 y 72 del Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, y los Cánones 18, 35 y 38 del Código de Etica Profesional, 4 LPRA Ap. IX,

y que, en consecuencia, procede la suspensión de éste del ejercicio de la abogacía y la notaría, no estamos de acuerdo con que su sanción se limite a un término de tres (3) meses. Y es que, en el procedimiento disciplinario ante la consideración de esta Curia, quedó claramente demostrado que el licenciado González Pérez: 1) aceptó que autorizó el traspaso de determinados vehículos de arrastre sin la presencia del titular de éstos; 2) no corroboró el tipo de vehículo que se traspasaba ni la razón por la que el vendedor había endosado el título; 3) certificó que el promovente firmó en su presencia cierto Certificado de Título cuando ello en realidad no ocurrió; 4) admitió que olvidó reportar el traspaso de los vehículos de arrastre en el Registro de Testimonios, así como en el Índice Mensual de Actividad Notarial; y 5) no se cercioró del negocio jurídico en cuestión. A nuestro juicio, la conducta desplegada por el licenciado González Pérez debe conllevar -- como mínimo -- la suspensión del ejercicio de la abogacía y la notaría por un término de seis (6) meses. Véase, de manera análoga, *In re Villalona Viera,* 2021 TSPR 27, 206 DPR ___ (2021); *In re Vázquez Margenat,* 204 DPR 968 (2020); *In re Arocho Cruz et al.,* 198 DPR 360 (2017)."

La Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Estrella Martínez no intervinieron.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo